**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 14-69** |
| **NASER YOUSEF GHEITH** | **SECTION I** |

## ORDER & REASONS

Before the Court is *pro se* defendant Naser Yousef Gheith's ("Gheith") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On January 13, 2016, Gheith pled guilty to conspiracy to distribute and possess with the intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846.[3] This Court sentenced Gheith to a term of imprisonment of 240 months, and a ten-year term of supervised release.[4] Gheith is currently incarcerated at FCI Lompoc ("Lompoc"); his projected release date is June 29, 2031.[5]

Gheith now requests compassionate release pursuant to the First Step Act.[6] Gheith argues that COVID-19 presents an "emergency situation" at Lompoc. Gheith

---

[1] R. Doc. No. 178.
[2] R. Doc. Nos. 180 & 181-1.
[3] R. Doc. No. 174 (judgment). *See also* R. Doc. No. 1 (indictment); R. Doc. No. 82 (plea agreement); R. Doc. No. 116 (final presentence report).
[4] R. Doc. No. 174, at 3 (judgment).
[5] R. Doc. No. 180, at 2.
[6] R. Doc. No. 178.

states that the "approximately 200 other inmates" in his Lompoc dorm have tested positive for COVID-19; "social distancing is an impossibility" because "inmates sleep, eat, and reside within 2.5 feet of one another" and "share two communal bathrooms"; the "institution has not and cannot protect" him; and that he cannot "protect himself using any of the National Institutes of Health or Centers for Disease Control proscribed measures."[7]  Noting that Lompoc has been "the most COVID-19 infected and impacted prison in the Bureau of Prisons," Gheith states that he "himself has tested positive for COVID-19."[8]

In a supplemental memorandum, Gheith draws the Court's attention to *Torres v. Milusnic*, No. 20-4450, 2020 WL 4197285, at *23 (C.D. Cal. July 14, 2020) and to a report from July 2020, titled "Pandemic Response Report 20-086 – Remote Inspection of Federal Correctional Complex Lompoc," issued by the Department of Justice Office of the Inspector General, to demonstrate Lompoc's faulty handling of COVID-19.[9] Gheith also appends to the supplemental memorandum an affidavit of a Edward Paul Cragg, who attests that he has "lived, from at least March 01, 2020 through [August 4, 2020]" at Lompoc, and "I have not seen any staff member don any PPE since the month of May, 2020, when we were on medical isolation after testing positive for

---

[7] *Id.* at 2–3.

[8] *Id.* at 2.  As of September 30, 2020, zero inmates and three staff members currently test positive for COVID-19 at Lompoc.  Seven hundred forty-seven inmates and sixteen staff members have recovered.  Two inmates and zero staff members have died from it.  *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 30, 2020).

[9] R. Doc. No. 184, at 1.  The OIG report is available at https://oig.justice.gov/sites/default/files/reports/20-086.pdf (last accessed Sept. 29, 2020).

COVID-19."[10]   This situation, Gheith argues, amounts to an extraordinary and compelling reason for a sentence reduction.[11]

Additionally, Ghieth states in the supplemental memorandum that he is obese, with a Body Mass Index (BMI) of 36.7, and that "due to COVID-19 related symptoms," he was prescribed an albuterol sulfate inhaler in July 2020.[12]   He appended to this supplemental memorandum a copy of the prescription for the inhalation aerosol, which has his name on it.[13]

Gheith asserts that he "exhausted" the administrative process.[14]   Though, according to Gheith, prison staff "informed" inmates "multiple times that there will not be any remedy available," Gheith states that he nevertheless requested "home confinement and/or a Reduction In Sentence" on March 27, 2020.[15]   He states that his request was denied on April 24, 2020.[16]

In support of his request for compassionate release, Gheith argues that he has maintained an "impeccable prison record" and that he "has never received an incident report."[17]   He states that he has "no history of violence," gang affiliation, or sexual

---

[10] R. Doc. No. 184-1, at 2.

[11] *See* R. Doc. No. 178, at 2–3.

[12] R. Doc. No. 184, at 2; *see also* R. Doc. No. 184-1, at 5 (self-reporting obesity with a BMI of 36.5).

[13] R. Doc. No. 184-1, at 1.

[14] R. Doc. No. 178, at 3.

[15] *Id.*

[16] *Id.* at 3.   Gheith states that copies of his administrative remedy request and denial "were previously mailed to the Federal Public Defenders Office in Suite #318 of the Hale Boggs Federal Building."   *Id.* at 4.

[17] *Id.* at 2.

offenses, and that the crime for which he is imprisoned is a non-violent drug offense.[18] Additionally, Gheith avers that he has successfully completed a GED program as well as "numerous recidivism reduction programs including the 12 hour drug program, victim impact, [and] Best Man classes[.]"[19]  Should he be released, Gheith states that he would have "a safe home with loving family (mother, father, brothers – all COVID-19 free)[,]" and he provides the Court with their address and contact phone number.[20] In light of these alleged circumstances, Gheith asks that the Court reduce his sentence to time served.[21]

The government opposes Gheith's motion.  The government argues that Gheith "has not demonstrated 'extraordinary and compelling reasons' warranting release."[22] Describing BOP's general response to COVID-19 and outlining the various precautions being taken to safeguard inmates nationwide,[23] the government states that it categorically "opposes compassionate release of any inmate who has tested positive for COVID-19."[24]  Additionally, the government notes that Gheith "does not provide any documentation to support" his claim that he tested positive for COVID-19, and it states that Gheith "does not make any claim that he has suffered any

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 3.
[21] *Id.*
[22] R. Doc. No. 180, at 22.
[23] *Id.* at 2–6.
[24] *Id.* at 21 ("The government's opposition extends while that person is being treated and/or is recovering, in order to protect public health.").  In view of the Court's denial of compassionate release for reasons stated herein, the Court need not address potential problems with such an argument.

complications or that he has recognized risk factors."[25]   Finally, the government asserts that Gheith has not satisfied his burden of establishing that he is not a danger to the community.[26]   The government observes that Gheith possesses a "significant criminal history," including "obstructing police and evading arrest[,]" in addition to revocation of his probation.[27]

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13.

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to

---

[25] *Id*. (noting that Gheith is 41 years old).
[26] *Id*. at 26.
[27] *Id*. (citing R. Doc. No. 116) (presentence report).

additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).  However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended.  The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4.  This discrepancy has been recognized by many courts.  *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act.  *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  Consequently, these district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case-by-case basis, and that the policy statement, while helpful, is not dispositive with regard to such claims.  *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent

assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief."); *see also United States v. Haynes*, No. 93-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

Accordingly, the Court will consider whether Gheith has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors.

## A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). *See United States v. Franco*, No. 20-60473, 2020 WL 5249369, at *1–*2 (5th Cir. Sept. 3, 2020) (holding that the statutory requirement is not jurisdictional but is mandatory).

Gheith submitted a request for compassionate release to the warden of Lompoc on March 27, 2020.[28]   The warden denied his request on April 24, 2020.[29]   The government agrees that Gheith has satisfied the exhaustion requirement.[30] Accordingly, the Court has jurisdiction to consider Gheith's motion. *See* 18 U.S.C. § 3582(c)(1)(A).

## B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Davis' sentence. *See Perdigao*, 2020 WL at *2; *Beck*, 425 F. Supp. at 579.   The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   U.S.S.G. § 1B1.13 cmt. 1(A).

---

[28] R. Doc. No. 178, at 3.

[29] *Id.*

[30] R. Doc. No. 181, at 1 ("The government previously argued that Gheith failed to exhaust his administrative remedies. That argument was an incorrect interpretation of the pertinent statute."); R. Doc. No. 181-1, at 12 (submitting that Gheith was not required to pursue administrative appeals within BOP and was permitted to file his petition with the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and withdrawing the government's prior argument that Gheith had failed to exhaust his administrative remedies).   *See* R. Doc. No. 180, at 1, 11–12.

Gheith alleges, without supporting evidence, that he suffers from obesity.[31] Though obesity is an "underlying medical condition" that poses "increased risk for severe illness from COVID-19,"[32] courts have found that obesity does not provide adequate grounds for compassionate release.  *See United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Whiteman,* No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, No. 14-36, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint obesity and hypertension are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary").  Gheith's undocumented obesity, assuming it is a condition he suffers, does not rise to the level of extraordinary and compelling.

Gheith's previous COVID-19 infection also is not an extraordinary or compelling reason.  Gheith does not report having been hospitalized or having

---

[31] R. Doc. No. 184, at 2.

[32] *People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity.

experienced severe symptoms while infected with the virus.   Nor does Gheith assert he is receiving inadequate care within BOP for the after-effects of the virus or that he is unable to provide self-care from within Lompoc.   Indeed, Gheith's ongoing receipt of medical care, as demonstrated by his prescription for an inhalation aerosol,[33] evidences that he is able to care for his symptoms within prison.  *See United States v. Mazur*, No. 18-68, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated . . . . Notably absent from Mazur's motion is any assertion that the BOP is not providing him with adequate care."); *United States v. Mogan*, No. 14-40, 2020 WL 2558216, at *4 (E.D. La. May 20, 2020) (Morgan, J.) (dismissing the compassionate release motion of a COVID-19 positive defendant where "[b]ased on the medical records provided by the AUSA, Petitioner's COVID-19 symptoms are being diligently monitored and treated by BOP Health Services.").  *Cf. United States v. Arreola-Bretado*, 445 F. Supp. 3d 1154, 1158 (S.D. Cal. 2020) (granting compassionate release of a defendant who tested positive for COVID-19, who suffered from paroxysmal atrial fibrillation, cardiac murmur, an enlarged liver, and Graves Disease, and who "demonstrate[d] she would have a higher level of medical care outside of the facility.").

## C. Safety to Others and the Community

Even if the Court were to find that Gheith's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not

---

[33] R. Doc. No. 184-1, at 6.

demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Gheith's criminal history includes three convictions in the State of California for possession of a controlled substance for sale,[34] as well as multiple convictions for possession of controlled substances, receiving stolen property, and taking a vehicle without the owner's consent.[35]  He also was convicted of evading an officer and auto theft,[36] and he has had his probation and parole either terminated as unsatisfactory or revoked on numerous occasions.[37]

In the factual basis for the plea agreement, pursuant to which Gheith is now incarcerated, he agreed that he transacted and sold crystal methamphetamine as part of an international scheme spanning Germany, California, and New Orleans.[38] Over the course of the Drug Enforcement Administration investigation, Gheith sold a cooperating witness a total of four pounds of methamphetamine.[39]  The nature and circumstances of the instant offense demonstrate that Gheith would be a danger to

---

[34] *See* R. Doc. No. 116, at 10–11 ¶¶ 45–46, 53; *see also* R. Doc. No. 78, at 1 (superseding bill of information to establish prior conviction).
[35] *See* R. Doc. No. 116, at 13–15 ¶¶ 49–52, 54.
[36] *See id*. at 12, 14–15 ¶¶ 48, 52, 54; *see also* R. Doc. No. 188, at 7–8.
[37] *See* R. Doc. No. 116, at 11, 13, 15 ¶¶ 46, 49, 54.
[38] R. Doc. No. 83 (factual basis).
[39] *Id*. at 2.

the community if released. *Cf. Perdigao*, 2020 WL 1672322, at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

### III.

After reviewing the § 3553(a) factors[40] and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Gheith's sentence.

Accordingly,

**IT IS ORDERED** that Gheith's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, October 1, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[40] The Court has specifically considered 18 U.S.C. § 3553(a)(1), (2)(A)–(C), and (5).